UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **MARCUS VERNELL COLEMAN** | : | **DOCKET NO. 2:18-cv-0563** |
| **D.O.C. # 322817** | | **SECTION P** |
| | | |
| **VERSUS** | : | **UNASSIGNED DISTRICT JUDGE** |
| | | |
| **DARRYL VANNOY, ET AL.** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by Marcus Vernell Coleman, who is proceeding pro se in this matter. Coleman is an inmate in the custody of the Louisiana Department of Public Safety and Corrections and is currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. Darryl Vannoy, warden of that facility, opposes the petition. Doc. 13. Coleman has also filed a reply. Doc. 16.

This petition is referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the court. For the following reasons **IT IS RECOMMEDED** that the petition for writ of habeas corpus be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I.
### BACKGROUND

#### A. *Conviction*

Coleman was charged by bill of information in the Fourteenth Judicial District, Calcasieu Parish, Louisiana, with one count of armed robbery, later amended to one count of armed robbery with a firearm, a violation of Louisiana Revised Statute §§ 14:64 & 14:64.3. Doc. 13, att. 1, p. 41.

The charge related to an allegation that Coleman had taken victim Jill Dozart's purse at gunpoint after accosting her while she was walking toward a restaurant. *State v. Coleman*, 2010 WL 3903831, at \*1–\*2 (La. Ct. App. 3d Cir. 2010). Coleman proceeded to trial by jury and was convicted as charged on April 3, 2007. Doc. 13, att. 1, pp. 195–97. He was then billed as a habitual offender.[1] On October 17, 2007, a habitual offender hearing was held. There Coleman admitted to being a fourth felony offender and was sentenced to a mandatory minimum prison term of 99 years, without benefit of probation or suspension of sentence. Doc. 13, att. 2, pp. 207–19.

### B. Direct Appeal

Coleman sought review in the Louisiana Third Circuit Court of Appeal, raising the following assignments of error:

1. There was insufficient evidence to support the convictions.

2. The use of hearsay testimony at his trial violated Coleman's rights under the Confrontation Clause.

*Coleman*, 2010 WL 3903831, at \*1–\*4. The court reviewed both of these claims, as well as an error patent relating to the trial court's failure to specify that the sentence be served without benefit of parole. *Id.* It determined that there was no merit to the sufficiency of evidence claim, that the hearsay claim could not be addressed because it was not objected to at trial, and that the error patent, although rendering the sentence illegally lenient, did not warrant relief because it had not been raised as error. *Id.* Coleman sought writs in the Louisiana Supreme Court, which denied same on March 4, 2011. *State v. Coleman*, 58 So.3d 474 (La. 2011). He did not file a petition for writ of certiorari in the United States Supreme Court. Doc. 1, p. 3.

---

[1] The habitual offender bill is not contained in the state court record available at the given docket number. Doc. 17, p. 8 n. 1.

## C.  *State Collateral Review*

Coleman filed a pro se application for post-conviction relief in the trial court on February 13, 2012.[2] *See* doc. 13, att. 4, pp. 162–85 (memorandum in support of application). There he claimed ineffective assistance of counsel, based on trial counsel's failure to object to statements violating his rights under the Confrontation Clause and failure to use a police report to impeach a witness. *Id.* He filed a supplement to the application on May 28, 2013, claiming that his right to due process was violated when (1) the state knowingly presented false testimony (*Napue* violation) and (2) he was convicted based on an unconstitutional statute/improper jury instructions. *Id.* at 70–84. The trial court denied the application on June 20, 2014, concluding that Coleman had already raised these issues on appeal and noting that the court had denied an application for post-conviction relief in November of 2008 while the petitioner's appeal was pending. *Id.* at 105. Coleman sought review in the Third Circuit which granted the writ on November 5, 2014, and remanded the case for a ruling on the merits of Coleman's claims. *Id.* at 112.

The trial court ruled on April 13, 2016, noting that a hearing was scheduled for the following month but that the court no longer deemed it necessary. Doc. 13, att. 5, pp. 93–94. It then determined that Coleman failed to show a basis for relief under any of his claims. *Id.* Coleman sought review in the Third Circuit, which granted the writ and determined that the trial court had erred and that Coleman had shown that he had received ineffective assistance on his failure to object to Confrontation Clause violation claim. *Id.* at 184. Accordingly, it set aside Coleman's conviction and sentence and remanded the matter for a new trial. *Id.* It made no statement regarding the other claims. *Id.* The state sought review with the Louisiana Supreme Court, which reversed the Third Circuit's ruling on April 16, 2018, because it determined that Coleman could not

---

[2] For pro se filings by an inmate, this court uses the date that the pleading was surrendered for mailing, if available, as the date of filing. If that date is not provided, we look to the date that the pleading was received by the court.

demonstrate adequate prejudice from counsel's performance. *State v. Coleman*, 241 So.3d 297 (La. 2018). Accordingly, it reinstated the petitioner's conviction and the trial court's ruling on his application for post-conviction relief. *Id.*

### D. Federal Habeas Petition

Coleman filed the instant petition in this court on April 22, 2018. Doc. 1; *see id.* at 15 (providing date of mailing). Here he raises the following claims:

1. Ineffective assistance based on counsel's failure to object to statements introduced in violation of Coleman's rights under the Confrontation Clause.

2. Evidence was insufficient to sustain the verdict.

3. His rights under the Confrontation Clause were violated.

4. Counsel was ineffective for failing to impeach a witness.

5. The state knowingly presented false evidence.

6. The statute creating the offense is unconstitutional.

Doc. 1, att. 2.[3]

## II.
### STANDARDS ON HABEAS REVIEW

### A. Timeliness

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This period generally runs from the date that the conviction becomes final. *Id.* The

---

[3] Coleman phrases these claims differently in his petition and appears to assert different grounds for relief there. Doc. 1. The allegations cursorily asserted there, however, have not been briefed. As this court has held, "[s]imply listing a habeas claim and not briefing it is an abandonment or waiver of that claim." *Williams v. Warden, Louisiana State Penitentiary*, 2013 WL 3894003, at *3 (W.D. La. Jul. 26, 2013). Furthermore, some of the allegations made in the complaint do not appear to relate to the claims exhausted by Coleman in the state courts. Accordingly, we look to the claims as raised and characterized in the memorandum to determine the grounds on which Coleman seeks relief in this court.

time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. *Id.* at § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n. 1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The limitations period is not tolled, however, for the period between the completion of state review and the filing of the federal habeas application. *Rhines v. Weber*, 125 S.Ct. 1528 (2005). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

### B.  Exhaustion and Procedural Default

Exhaustion and procedural default are both affirmative defenses that may be considered waived if not asserted in the respondent's responsive pleadings. *E.g.*, *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994). However, the federal district court may also consider both doctrines on its own motion. *Magouirk v. Phillips*, 144 F.3d 348, 357–59 (5th Cir. 1998). Therefore we consider any assertions by respondent under these doctrines, in addition to conducting our own review.

## 1. *Exhaustion of State Court Remedies*

The federal habeas corpus statute and decades of federal jurisprudence require that a petitioner seeking federal habeas corpus relief exhaust all available state court remedies before filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734, 740–41 (1886). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987). The exhaustion requirement is not satisfied if the petitioner presents new legal theories or entirely new factual claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a). Thus, in order for a Louisiana prisoner to have exhausted his state court remedies he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner, based on the same general legal theories and factual allegations that he raises in his § 2254 petition.

## 2. *Procedural Default*

When a petitioner's claim is dismissed by the state court based on state law grounds, and those grounds are independent of the federal question and adequate to support the judgment, he may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or that review is necessary "to correct a fundamental miscarriage of justice." *Coleman v.*

*Thompson*, 111 S.Ct. 2546, 2553–54, 2564 (1991) (internal quotations omitted). Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default) or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which he would be required to petition would now find the claims procedurally barred ("technical" procedural default). In either instance, the petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). This is not a jurisdictional matter, but instead a doctrine "grounded in concerns of comity and federalism." *Trest v. Cain*, 118 S.Ct. 478, 480 (1997). The grounds for traditional procedural default must be based on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989). To serve as adequate grounds for a federally cognizable default, the state rule "must have been firmly established and regularly followed by the time as of which it is to be applied." *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (internal quotations omitted).

### C.  *General Principles*

When a state court adjudicates a petitioner's claim on the merits, this court reviews the ruling under the deferential standard of 28 U.S.C. § 2254(d). *E.g.*, *Corwin v. Johnson*, 150 F.3d 467, 471 (5th Cir. 1998). That statute provides that a writ of habeas corpus shall not be granted unless the state court's adjudication resulted in a decision that was (1) contrary to clearly established federal law or involved an unreasonable application of that law, or (2) based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d). Where a habeas court is faced with an unexplained decision on the merits, it "looks through" that decision to the last related state court decision that provides a relevant rationale and

presumes that the unexplained decision adopts the same reasoning. The respondent may rebut the presumption by showing that the unexplained decision most likely relied on different grounds than the reasoned decision below. *Wilson v. Sellers*, 138 S.Ct. 1188 (2018). Our review, however, ultimately encompasses "only a state court's decision, and not the written opinion explaining that decision." *Maldonado v. Thaler*, 625 F.3d 229, 239 (5th Cir. 2010) (internal quotations omitted); *see also Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) ("The statute compels federal courts to review for reasonableness the state court's ultimate decision, not every jot of its reasoning.") Even if the state court issues a summary denial of the claim, "the habeas petitioner's burden still must be met be showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011).

The first standard, whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law, applies to questions of law as well as mixed questions of law and fact. The petitioner must demonstrate that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S.Ct. at 786–87. A decision is only contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a [contrary result]." *Bell v. Cone*, 125 S.Ct. 847, 851 (2005) (quotations and citations omitted). As the Court recently emphasized, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.' . . . Nor, of course, do state-court decisions, treatises, or law review articles." *Kernan v. Cuero*, 138 S.Ct. 4, 9 (2017) (internal citation omitted).

The second standard – whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence – applies only to questions of fact. It is insufficient for a petitioner to show that the state court erred in its factual determination. Instead, he must demonstrate that the factual determination was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 127 S.Ct. 1933, 1939 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Instead, a presumption of correctness attaches to the state court's factual determinations and the petitioner must rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## III.
### LEGAL ANALYSIS

### A. *Timeliness*

Coleman's conviction became final on June 2, 2011, when his 90-day window for seeking review in the United States Supreme Court expired. S. Ct. R. 13. Accordingly, **256 days** accrued against § 2244(d)'s one year limitations period before he filed his application for post-conviction relief in the trial court on February 13, 2012. The limitations period was then tolled until the Louisiana Supreme Court's decision on April 16, 2018, and an additional **six days** accrued against the one year limit before Coleman filed his federal habeas petition on April 22, 2018. Therefore only **262 days** have accrued against the one-year limit and the matter is timely.

### B. *Exhaustion and Procedural Default*

The respondent asserts that all claims with the exception of the first one "were either never presented to the Louisiana Supreme Court and therefore are not exhausted, and/or the claims are procedurally barred . . . ." Doc. 17, p. 16. We disagree with respect to the sufficiency of evidence

claim, noting that it was clearly exhausted on the merits as described above, but consider grounds for lack of exhaustion/procedural default of claims three through six below.

Claim 3, the Confrontation Clause violation raised in the direct appeal, was denied by the Third Circuit under Article 841(a) of the Louisiana Code of Criminal Procedure, which bars review of errors that were not objected to at the time of trial, and Uniform Rules of the Courts of Appeal Rule 1-3, which defines the scope of review for Louisiana appellate courts. *Coleman*, 2010 WL 3903831 at *4. The Louisiana Supreme Court denied review without comment. *Coleman*, 58 So.3d at 474.

The United States Supreme Court has upheld a contemporaneous objection rules as basis for procedural default and the Fifth Circuit has specifically recognized Article 841(A) as an adequate and independent state procedural rule. *Wainwright v. Sykes*, 97 S.Ct. 2497, 2506–07 (1977); *Procter v. Butler*, 831 F.3d 1251, 1253 (5th Cir. 1987). Coleman fails to assert a basis for excusing default of this claim. Accordingly, he is barred from presenting it on habeas review and we consider it only to the extent that it is raised in his first ineffective assistance claim.

Claims 4, 5, and 6 (ineffective assistance/failure to impeach, *Napue* violation, and unconstitutional statute/jury instructions) were all presented in Coleman's original and supplemental applications for post-conviction relief to the trial court, as described above. However, it does not appear that any of these claims were presented to the Louisiana Supreme Court – the Third Circuit had only granted the writ as to the ineffective assistance/Confrontation Clause claim, and had not ruled as to the other claims. Doc. 13, att. 5, p. 184. Coleman did not raise his other claims in his response to the state's writ application and the Louisiana Supreme Court did not address the other claims in its decision. *See* doc. 13, att. 5, pp. 193–200; *Coleman*, 241 So.3d at 298. The petitioner's time for seeking supervisory writs of the trial court's ruling or

filing a second application for post-conviction relief has passed unless he can show exceptional circumstances not applicable in this case. *See* Uniform Rules, Courts of Appeal – Rule 4.3 (providing that the return date, within which the application must be filed in the appellate court, shall not exceed thirty days from the date a written judgment in a criminal case is signed); La. C. Cr. P. art. 930.8(A). Accordingly, these claims are subject to technical procedural default. Coleman provides no basis for excusing a default of these claims, and so he is barred from obtaining federal habeas review on their merits.

### C. *Merits Consideration*

#### 1. *Ineffective assistance – failure to object to Confrontation Clause violation*

Coleman first raises the claim on which the Third Circuit had reversed his conviction: that he received ineffective assistance when counsel failed to object to statements introduced in violation of his rights under the Confrontation Clause. Because the Louisiana Supreme Court's reversal of that decision was the last decision on the merits, it is the one under § 2254(d) review in this matter. That court stated that Coleman "fail[ed] to show that his counsel's performance prejudiced him to the extent that the trial was rendered unfair and the verdict suspect." *Coleman*, 241 So.3d at 298.

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 104 S.Ct. 2052 (1984). Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial. *Id.* at 2064. The first prong does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of

reasonableness. *Id.* Judges have been cautioned towards deference in their review of attorney performance under *Strickland* claims in order to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (quoting *Strickland*, 104 S.Ct. at 1065) (quotations omitted). Accordingly, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

The second prong requires the petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 104 S.Ct. at 2055–56. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 2056. In other words, the petitioner must show prejudice great enough to create a substantial, rather than conceivable, likelihood of a different result. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011) (quoting *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011)). "Both of [Strickland's] prongs must be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong." *Williams v. Stephens*, 761 F.3d 561, 566–67 (5th Cir. 2014).

This claim relates to trial counsel's failure to object to statements that allegedly violated Coleman's rights under the Confrontation Clause. The Sixth Amendment's Confrontation Clause, made binding on the states through Fourteenth Amendment, grants a defendant "the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, the Supreme Court held that this clause bars the admission of out-of-court testimonial statements against the accused unless (1) the declarant is unavailable and (2) the defendant had a prior opportunity to cross-examine the declarant, regardless of whether the statements might be deemed reliable. 124 S.Ct. 1354, 1374 (2004). Under *Crawford* the category "testimonial statements"

"applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.*

Coleman alleges that counsel failed to object to testimony by Detective David Rupf violating his rights under the Confrontation Clause. Doc. 14, att. 2, pp. 11–26. Rupf testified and gave the complained-of statements (1) at the preliminary examination and (2) during trial. We examine each occasion and then determine whether the Louisiana Supreme Court's decision, that Coleman could not satisfy *Strickland*'s second prong through these alleged deficiencies, was contrary to or involved an unreasonable application of clearly established federal law.

Rupf first testified at the preliminary examination as to statements made by co-defendants Bonita Hillary and Kenyon Budwine, who were both charged with being accessories after to the fact to the petitioner's crime. Doc. 13, att. 2, pp. 36–64; *see* doc. 13, att. 1, p. 41. At that hearing Rupf, a detective with the Lake Charles Police Department, described his involvement with the investigation, beginning with hearing of an armed robbery outside of a local restaurant on October 9, 2004. Doc. 13, att. 2, pp. 36–37. The victim listed her cell phone among the stolen items and gave the number to police. *Id.* Rupf began calling the phone, which was eventually answered by a woman who identified herself as Kim and said that she was in Beaumont, Texas. *Id.* at 37–38. Kim denied any knowledge of the armed robbery and agreed to meet Rupf at a store in Vinton, Louisiana. *Id.* at 38–39. Soon thereafter Rupf met up with Kim, whom he was then able to identify as Bonita Hillary, at a motel in Vinton. *Id.* at 39–40. Hillary told Rupf that she bought the phone from Marcus Coleman, a Vinton resident who spent a lot of time in Lake Charles, for $80.00. *Id.* at 40. She also stated that Coleman was with another man she could not identify. *Id.*

Rupf soon began to view Hillary as a person of interest, however, based on the victim's statement that a woman had watched the robbery from the passenger seat of the perpetrator's car

and that Hillary matched that description. *Id.* at 43–46. Rupf Mirandized Hillary and interviewed her at the Vinton Police Department. *Id.* at 46–47. During that interview she admitted that she had been with Coleman and the other male, Kenyon Budwine, on the day of the robbery and that they had gone into Lake Charles to buy drugs. *Id.* at 47. Hillary told Rupf that they had all been taking drugs that night, and that she was aware that Coleman had a gun with him in the vehicle. *Id.* at 47–48. Budwine, who was driving, pulled up to a restaurant parking lot at Coleman's direction and let him out, then continued to make a loop around the block. *Id.* When they came back, Hillary stated to Rupf, they saw Coleman struggling with the victim and Hillary screamed at Coleman to stop. *Id.* Coleman then got in the car with the victim's purse and the three sped off. *Id.* Hillary told Rupf that Coleman admitted on the way back that he put his gun against her face when she started fighting him. *Id.*

Rupf then interviewed Budwine, who was also *Mirandized. Id.* at 50. Budwine told Rupf that he had been taking a lot of pills that night and did not have clear recollections, but that he recalled letting Coleman out at the restaurant parking lot and then, when he completed circling the block, seeing Coleman struggling with a white woman over her purse. *Id.* at 52. He then recalled that Coleman jumped in the car with the purse. *Id.* Budwine did not see Coleman with a gun but stated that "had heard something about [it]." *Id.* at 53.

At trial Rupf was called by the state and summarized the statements made to him by Hillary. *Id.* at 153–58. Rupf only testified that Budwine had initially denied knowing Coleman, and confirmed on cross-examination that he had also interviewed Budwine. *Id.* at 149, 170. The defense made no objections to Rupf's testimony about either codefendant's statements, and neither Budwine nor Hillary appeared at trial or at the preliminary examination.

The Confrontation Clause does not give defendants a right of access to adverse witnesses before trial; it is "a *trial* right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination" rather than "a constitutionally compelled rule of pretrial discovery." *Pennsylvania v. Ritchie*, 107 S.Ct. 989, 999 (1987) (plurality opinion) (emphasis in original); *see also id.* at 999 n. 10 and accompanying text (collecting examples of the Court upholding a Confrontation Clause infringement claim only where the violation occurred at trial). "[I]t is this literal right to 'confront' the witness **at the time of trial** that forms the core of the values furthered by the Confrontation Clause." *California v. Green*, 90 S.Ct. 1930, 1934–35 (1970) (emphasis added); *see also United States v. Morgan*, 505 F.3d 332, 337–39 (5th Cir. 2007) (Confrontation Clause did not apply to grand jury testimony used to authenticate business records at a preliminary proceeding). As the respondent asserts, Coleman cannot show that there was any merit to a Confrontation Clause objection at the preliminary examination. Therefore he cannot demonstrate prejudice from that alleged deficiency.

As for trial, however, the record does not reflect whether Coleman had any opportunity to cross-examine Hillary and Budwine. Their statements to Rupf, investigating officer on this case, would certainly appear to qualify as testimonial under *Crawford*, however. Accordingly, we assume for the sake of argument that there was a basis for objection under *Crawford* and that counsel might have performed deficiently by failing to raise the issue. We instead look to whether the petitioner can satisfy *Strickland*'s second prong.

The respondent maintains that sufficient prejudice cannot be shown because exclusion of Hillary and Budwine's statements would not have changed the result in his trial. Furthermore, under both federal and Louisiana law, a Confrontation Clause violation is subject to harmless error analysis. *State v. Mullins*, 188 So.3d 164, 171 (La. 2016) (citing *State v. Welch*, 760 So.2d 317,

321–22 (La. 2000)); *see, e.g.*, *United States v. Alvarado-Valdez*, 521 F.3d 337, 341 (5th Cir. 2008). On direct appeal, therefore, the Third Circuit would have analyzed the error "by assuming that the damaging potential of the error was fully realized, then asking whether the reviewing court could conclude that the error was nevertheless harmless beyond a reasonable doubt." *Mullins*, 188 So.3d at 171 (citing *Welch*, 760 So.2d at 321–22). Under this standard, "[t]he importance of the testimony . . . in the state's case, whether it is cumulative, the presence or absence of evidence corroborating or contradicting the testimony, the extent of the cross-examination permitted, and the overall strength of the state's case are factors to be considered in determining whether the error was harmless." *Welch*, 760 So.2d at 322. Accordingly, we also determine whether failure to raise the objection deprived Coleman of a chance of reversal on appeal as part of our *Strickland* analysis.

The victim, Jill Dozart, testified at Coleman's trial as the state's first witness. Doc. 13, att. 2, p. 121. She stated that she had plans to go out to dinner with several friends at a local restaurant on the night of October 9, 2004. *Id.* at 122–23. On the way she stopped at a drive-through ATM and noticed people in a gray Saturn in front of her. *Id.* at 123–24. She was on the phone with a friend at the time and asked the friend to stay on the line, because she found the way that the people in the car ahead of her were "messing with the machine" suspicious. *Id.* at 124–25. Eventually the gray Saturn drove off and Dozart pulled up to the ATM. *Id.* She withdrew forty dollars and continued to the restaurant, then got off the phone with her friend while she looked for a parking space. *Id.* at 125–26. She searched for a while, not wanting to park behind the restaurant because it was already dark, and ultimately pulled into the lot next to the restaurant. *Id.* at 126–27. Then, as she walked from the lot to the restaurant, she heard someone running up behind her. *Id.* at 128. The person grabbed her and she began to scream and kick even as her assailant threatened to shoot her. *Id.* at 128–29. He took her purse and began to march her away from the restaurant while she

pleaded with him and attempted to fight him, and he pulled a gun on her. *Id.* at 129–32. She then saw a car pull up and believed the people inside would help her, but they began shouting to the assailant instead. *Id.* at 132. The assailant got in the car with Dozart's purse and Dozart ran off. *Id.* at 132–33. As the car drove away, she identified it as a gray Saturn. *Id.*

Dozart identified Coleman, sitting in the courtroom, as her assailant. *Id.* at 128–29. She admitted that she did not identify Coleman from a photo line-up (because none was provided to her), but stated that she immediately recognized him when his image was shown on television a few days later, in a report relating to the robbery. *Id.* at 136. She stated that she was in the kitchen while her husband was watching television in the living room and that she was not paying attention to the television until she saw a picture of a man whom she instantly recognized as the perpetrator. *Id.* Her husband corroborated this statement, recalling that when the program showed a picture of Coleman, she told him, "[T]urn that up, that's the guy that robbed me." *Id.* at 173.

Finally, Dozart testified that her cell phone had been stolen along with her purse and that she had given the number to police. *Id.* at 133, 142. Detective Rupf testified that he obtained Dozart's phone records. *Id.* at 145–46. Those records showed a call made from Dozart's phone to Coleman's residence in Vinton, Louisiana, at 9:06 pm on the night of the robbery. *Id.* at 158; *see id.* at 150–51 (providing Coleman's address). The defense, meanwhile, put on no witnesses of its own. It attempted to paint Dozart's identification of Coleman from the news report as unreasonably suggestive and to show Hillary and Budwine's unreliability. *See id.* at 139–41 (cross-examination of Jill Dozart); *id.* at 162–65, 169–72 (cross-examination of Detective Rupf); *id.* at 174–75 (cross-examination of Jeff Dozart, husband of the victim).

On this evidence, Coleman cannot show a reasonable probability that the outcome of his trial would have been different had counsel objected to and obtained the exclusion of Rupf's

testimony about statements that Hillary and Budwine made to him. It seems that the chief utility of these statements was to show the steps of Rupf's investigation and how the police came to uncover Coleman's identity. It was the victim's account and the phone records that ultimately proved his connection to the robbery rather than Hillary's self-serving account of the event. Meanwhile, Coleman fails to show how the brief statements cited from Budwine might have contributed to the jury's verdict.

Coleman cannot show sufficient prejudice under *Strickland* based on defense counsel's failure to urge exclusion of these statements or his failure to preserve the claim for appeal. He therefore fails to demonstrate that the Louisiana Supreme Court's decision was contrary to or involved an unreasonable application of federal law, and he is not entitled to federal habeas relief on this claim.

### 2. *Sufficiency of evidence*

Coleman next claims that there was insufficient evidence to sustain his conviction of armed robbery with a firearm. The Louisiana Third Circuit's decision on appeal is the one under § 2254(d) review for this claim. A sufficiency of evidence claim presents a mixed question of law and fact. *Taylor v. Cain*, 649 F.Supp.2d 460, 470 (E.D. La. 2009). Accordingly, we do not reassess any factual determinations made by the state courts and we instead review the Third Circuit's decision to determine whether it was contrary to or involved an unreasonable application of clearly established federal law.

A defendant's constitutional right to due process is violated when he is convicted of a crime without the state having met its burden of proof on every element of the offense.[4] *Jackson v. Virginia*, 99 S.Ct. 2781, 2787 (1979) (citing *In re Winship*, 90 S.Ct. 1068, 1073 (1970)). Such

---

[4] On federal habeas review, a court refers to the substantive elements of the offense as defined by state law. *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995).

claims are decided by determining whether, "viewing the evidence in the light most favorable to the prosecution, **any** rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Donahue v. Cain*, 231 F.3d 1000, 1004 (5th Cir. 2000) (internal quotations omitted; emphasis added). Thus, though state law may require the exclusion of all reasonable hypotheses of innocence, a court on habeas review "may find the evidence sufficient to support a conviction even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

Under *Jackson*, both direct and circumstantial evidence can contribute to the sufficiency of evidence and circumstantial evidence alone may be enough to support the conviction. *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990).  The habeas court must defer to the trial court's findings on issues of conflicting testimony and the weight of the evidence, resolving all conflicting inferences and credibility choices in favor of the verdict, and may not substitute its judgment for that of the factfinder's. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). Thus, under the standards of *Jackson* and § 2254, this court's review on sufficiency of evidence claims is "twice-deferential." *Parker v. Matthews*, 132 S.Ct. 2148, 2152 (2012).

The Louisiana Third Circuit conducted a review of the evidence presented at trial and determined that Dozart's positive identification of Coleman as the perpetrator was sufficient to support his conviction. *Coleman*, 2010 WL 3903831 at *1–*4. "In light of [her] testimony and that of Detective Rupf regarding the corroborating evidence obtained during the investigation," it went on, "[Coleman's] identity as the perpetrator was sufficiently proven by the State." *Id.* at *4.

Louisiana law defines armed robbery as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La. Rev. Stat. § 14:64(A). It imposes an additional penalty if the dangerous weapon is a firearm. *Id.* at § 14:64.3. Coleman did not dispute that the state produced sufficient evidence of the commission of an armed robbery against Dozart, and it appears that the state met its burden on these claims based on her testimony as described under the previous claim. Instead, he challenged the sufficiency of evidence relating to his identification as the perpetrator. *Coleman*, 2010 WL 3903831 at *2.

Under Louisiana law, as the Third Circuit noted, when identity is in dispute "the state is required to negate any **reasonable** probability of misidentification." *State v. George*, 19 So.3d 614, 618 (La. Ct. App. 3d Cir. 2009) (citing *State v. Hughes*, 943 So.2d 1047 (La. 2006)) (emphasis added). However, "[o]ne witness's positive identification is sufficient to support a conviction." *Id.* Under our doubly deferential standards on habeas review, there is no basis for second-guessing Dozart's testimony confirming the identity of the perpetrator, corroborated by a call made from her stolen cell phone shortly after the robbery in Lake Charles, Louisiana, to the Coleman's residence in Vinton. Therefore the petitioner shows no error to the Third Circuit's conclusion that this testimony, either alone or corroborated by the other evidence presented at trial, was sufficient to sustain the conviction.

## IV.
### CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that the instant petition be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to

file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE AND SIGNED in Chambers this 7th day of September, 2018.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE